FEUERSTEIN *v.* RICHTER.[1]

1. APPEAL AND ERROR — CHANCERY APPEAL — SEVERAL DEFEND-ANTS—DECREE.
    On appeal from a decree dismissing a bill against several, the decree stands as to a defendant against whom the appeal is not perfected, and the court makes no decree in his favor, as it might otherwise do.

2. WATERS AND WATERCOURSES — SURFACE WATERS — DRAINS — INJUNCTION—PROPRIETY.
    A bill to restrain the casting of surface waters upon complain-ant's land was properly dismissed where it appeared that, though water was probably being delivered upon complain-ant's lands by defendants' ditches faster than it would have been without them, a third person had relieved the situation by providing a sufficient outlet.

Appeal from Saginaw; Beach, J. Submitted June 17, 1908. (Docket No. 91.) Decided September 29, 1908.

[1] Rehearing denied March 3. 1909.

Bill by Marcus Feuerstein against Peter Richter and others to enjoin the casting of waters upon complainant's land. From a decree dismissing the bill, complainant appeals. Affirmed.

*Hugo P. Geisler,* for complainant.

HOOKER, J. Complainant and defendant Wickham (the latter now deceased) owned adjoining premises, viz., the east and west halves, respectively, of the N. E. ¼ of section 24, in township 9 N., range 3 W., Saginaw county. Defendant Aselton owned the N. ½ and defendant Richter the S. ½ of the S. E. ¼ of said section. All of this land is flat, though not level. A watercourse, called in this record "Fairchild Creek," extends north through the west halves of these quarter sections, and approaches comparatively near the line between the east and west halves of the northeast quarter section, opposite the south 40 rods thereof. Defendants Richter and Aselton made open drains, which, being connected, extend from south to north across the southeast quarter of said section, east of Fairchild creek, ending at or near a point in the north line of said quarter section, where complainant's land joins that of defendant Wickham. The last, or northernmost, section of said drain when completed had the effect of discharging its accumulated waters at that point, though a short ditch was extended from the end of said drain to Fairchild creek on the land of Aselton, or possibly partly on the land of Wickham, who seems to have thought that its effect was to discharge an undue amount of water into the creek, causing it to flood his premises. There is some testimony tending to show that at some stage of the controversy he attempted to fill or dam it, while the complainant extended a low dam or dyke on his land, extending some distance north and east from the southwest corner of his premises, to keep the water off from them. There was much controversy over this situation between complainant and defendant Wickham, and

it seems to have crystalized into the claim by complainant that all of the water brought through this long drain had its natural outlet in Fairchild creek, and therefore should not be allowed to overflow his land, while Wickham claimed that the natural outlet of most of the land drained by said ditch was to the northeast, across complainant's land to Spring brook, which was to the eastward. It is noticeable that at all times Wickham was willing and desirous of adjusting the difference, and made various attempts to do so, but complainant was unwilling to assume any share of the cost thereof, claiming that the water did not belong upon his land, and that he should not be to expense in the matter. They had quarrels and lawsuits over them, and finally, at Wickham's instance, they made an oral agreement that was substantially as follows: i. e., that, if complainant would extend a ditch across his land to the highway on the east side of his land, Wickham would dig a ditch in said highway connecting it with the county drain hereinafter mentioned. Wickham dug such ditch. Complainant did not do as he promised. Subsequently, at the intervention of neighbors, a written contract was made, and at complainant's suggestion it provided a penalty of $25 for its breach. Complainant did not perform and was sued, and in justice's court a judgment went against him, but on appeal the cause went against Wickham upon a law question. Complainant thereupon filled up so much of the drain as he had made.

There was a county drain on the south side of the east and west highway north of their premises. Wickham thereafter, and at his own expense, and upon his own land, made a ditch the whole length of his east line, connecting the Aselton drain with said county drain which furnished an outlet both to the east and west. The complainant subsequently filed this bill to restrain all of the defendants from maintaining these several drains, and for an award of damages. He was defeated, and his bill was dismissed by the learned circuit judge after a full hearing upon testimony taken in open court. Complainant has

appealed from the decree against Aselton and Richter. His counsel calls our attention to the fact that the appeal against Wickham has not been completed, inasmuch as he has died since the appeal was taken out, and that counsel have stipulated that he need not complete his appeal against Wickham. Counsel asks us to decide certain questions growing out of the situation, but we think it will be unnecessary.

The cause seems to turn largely upon the questions whether the Aselton ditch delivered water at complainant's corner which naturally should have gone to Fairchild creek, and whether, notwithstanding Wickham's drain, the Aselton ditch caused an increased flow over complainant's land. There was proof tending to show that there were two or three watersheds upon the Richter and Aselton lands, one of which, the westerly, sheds towards the west and northwest into Fairchild creek. The other two shed to the northeast, the water ultimately crossing complainant's land. There was a low ridge or slight elevation between the westerly watershed and the one next east, and this ridge extended to a point a short distance east of complainant's southwest corner. If this is true, and we agree with the learned circuit judge that a great preponderance of the proof indicates it, there is little room for the claim that much, if any, water belonging in Fairchild creek finds its way over his land. It is overwhelmingly proven that there is a low ridge along the line between complainant's and Wickham's premises. Wickham's ditch is upon or near it. It is obvious that the ditch takes off some of the accumulated water, and is therefore a benefit to complainant, rather than an injury, and that complainant had no just cause of complaint against Wickham. Understanding that the decree of the circuit court stands as to Wickham, because not appealed from, we make no decree in his favor as we should otherwise do.

There remains the claim that the complainant is injured by the undue collection and rapid delivery upon his land

of the water from the lands of Richter and Aselton.  We think it probable that the water is being delivered through these drains more rapidly than it would be were there no such drains; but, on the other hand, Wickham, by his ditch, has largely relieved complainant from the consequences, doing that which defendants should have done in the first instance, viz., provided an outlet.  We are of the opinion that this drain is adequate in all ordinary times, and, when inadequate, the overflow upon complainant's land is no greater than it would be had no ditches been made.  The claim that the Wickham ditch overburdens the county drain is without merit.  Complainant's case is one without equity, and the learned circuit judge properly denied him relief.

The decree is affirmed, with costs.

MONTGOMERY, OSTRANDER, MOORE, and MCALVAY, JJ., concurred.